DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
James Petro, in his official capacity as Auditor of State,[1] appeals the decision of the Lorain County Court of Common Pleas, Probate Division. We affirm.
 I.
On April 6, 1994, Veta Genevieve Hendrix, as settlor, and Premier Bank and Trust, as trustee, entered into a trust agreement (hereinafter "the Hendrix Trust"). The agreement created an inter vivos trust, which was to terminate upon the settlor's death. Thereupon, the trust corpus was to be distributed to various parties as per the terms of the trust.
Upon the death of the settlor, on September 7, 1995, the trustee distributed the trust corpus as directed in the trust agreement. Among other distributions was the distribution of $200,000 to the Board of Trustees of the Grafton-Midview Public Library ("the Board"), appellees. In September, the Board requested an opinion from the office of Mr. Petro, Auditor of State, as to how the $200,000 could be invested. On November 16, 1995, an informal opinion was issued by the office of the Auditor of State. The opinion stated that the funds must be invested in accordance with the R.C. 135 et seq.
On February 3, 1997, the Board filed a declaratory judgment action against Mr. Petro, in his official capacity as Auditor of State, Betty Montgomery, in her official capacity as Attorney General, and Premier Bank and Trust, as trustee of the Hendrix Trust. The Board requested that the trial court declare that the Board could invest in corporate securities and was not prohibited from doing so by R.C. 135 et seq., as Mr. Petro had opined. On August 28, 1997, the parties entered into a joint stipulation of facts. The parties then filed cross-motions for summary judgment. The matter was then referred to a magistrate who, on March 9, 1998, decided that summary judgment should be entered in favor of Mr. Petro. The Board filed objections to the magistrate's decision on March 23, 1998. On September 15, 1998, the trial court rejected the magistrate's decision and entered summary judgment in favor of the Board. This appeal followed.[2]
 II.
Appellant asserts two assignments of error. We will address each in due course.
A. Second Assignment of Error
 The trial court erred as a matter of law when it granted judgment [sic] to Plaintiff-Appellee.
Mr. Petro asserts that the trial court erred by rejecting the magistrate's decision. He asserts that the trial court erred in determining that R.C. 1715.51 et seq. controls what the Board may invest in, rather than, as Mr. Petro asserts, R.C. 135 et seq. We disagree.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment isde novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491.
Generally, the investment of "all moneys in the treasury of the state or any subdivision of the state, or moneys coming lawfully into the possession or custody of the treasurer of state or of the treasurer of any subdivision" are governed by R.C. 135et seq. R.C. 135.01(K). If, however, an institution holds funds derived from a gift instrument for an eleemosynary purpose, the investment of those funds is governed by R.C. 1715.51 et seq. An institution includes "a governmental organization to the extent that it holds funds exclusively for [educational, religious, charitable, or other eleemosynary] purposes." R.C. 1715.51(A). Gift instruments are defined to include "a will, deed, grant, conveyance, agreement, memorandum, writing, or other governing document *** under which property is transferred to or held by an institution as an institutional fund." R.C. 1715.51(F). While under R.C. 135.14(B) investment of public money in corporate securities is not permitted, R.C. 1715.54(A)(1) allows investment in "stocks, bonds, debentures, and other securities[.]"
Our analysis as to the applicability of specific code provisions must begin with the interpretive provisions in the Revised Code itself. R.C. 1.51 states that
 [i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.
Although R.C. 135 et seq. generally controls the management of funds held by state agencies, R.C. 1715.51 speaks to situations where a governmental organization is given funds which, by the terms of the gift, are to be used for a charitable purpose. Hence, we conclude that R.C. 1715.51 et seq. is not reconcilable with R.C. 135 et seq., and that as R.C. 1715.51 et seq. is the more specific section as to application, it controls where it applies. Moreover, R.C. 1715.51 et seq. is the later enacted statute of the two, as it was first enacted in 1975, and was also amended more recently, in October of 1996, than R.C. 135 et seq. which was last amended in September of 1996. Hence, we conclude that, although R.C. 1715.51 et seq. is an anomaly with respect to the general rule, it acts as an exception to R.C. 135 et seq.
Furthermore, R.C. 135 et seq. applies generally to public funds, while a gift to a public institution for a charitable purpose cannot be said to have emanated from the public purse. One can discern "a distinction between monies that may be considered strictly as public monies, and monies which may come into the hands of the trustees by gifts or legacies to be used for the benefit of the [charity]." 1953 Ohio Atty.Gen.Ops. No. 3052, at 443, overruled by 1960 Ohio Atty.Gen.Ops. No. 1537, at 494. Moreover, the purpose of an endowment or gift that a government organization is to hold and invest to produce income for a charitable purpose is different than the safeguarding intent of R.C. 135 et seq. Hence,
 [i]f the gift or bequest is designated as an endowment, the principal to be held without diminution and the interest or income to be used for the benefit of the [charity,] * * * in the absence of specific directions by the donor, as to the form of investment, [the gift] should [be] invest[ed] in such [a] manner as to produce the largest return consistent with safety.
1957 Ohio Atty.Gen.Ops. No. 3052, supra, at 444. Hence, we discern a differing intent in R.C. 1715.51 et seq. and R.C. 135 etseq., and a different application.
The Board received a donation, which was for a charitable purpose and, by its terms, must be held exclusively for that purpose. The Hendrix Trust recites a grant of
 $200,000 to the Grafton Public Library in Grafton, Ohio. The money is to be invested and held by the library in a fund to be called the Roland H. and Veta Genevieve Hendrix Memorial Book Fund. Each year the income from the fund shall be used to purchase books, movies, art objects and other items to be added to the collection of the Grafton Public Library. Only the income from the fund is to be used, and the principal of the fund shall be retained by the library as a source of future income.
The grant contemplates a fund, which will produce a steady income stream for an educational and charitable purpose; namely, purchasing books and art for the use and enjoyment of the general pubic at a public library. Moreover, it is unnecessary to characterize the gift instrument as creating a trust fund, as our analysis "would be no different if the [institution] is considered to have full ownership of these funds, subject to the restrictions imposed on it by the governing gift instrument." Williams Collegev. Attorney Gen. (Mass. 1978), 375 N.E.2d 1225, 1227.
"`Generally, the dissemination of knowledge for the edification and improvement of mankind is regarded as a charitable object [sic]." Thus, public libraries have been extended charitable exemptions." OCLC Online Computer Library Ctr., Inc.v. Kinney (1984), 11 Ohio St.3d 198, 200, quoting Battelle Mem.Inst. v. Dunn (1947), 148 Ohio St. 53, 60. As noted above, while R.C. 135.01 et seq. governs the investment of public money held by government institutions generally, R.C. 1715.51 et seq. controls where a government organization holds money derived from a gift instrument for a charitable purpose. See R.C. 1.15. Hence, we conclude that, as the bequest at issue was a donation to a public library for a charitable purpose, the investment standards set forth in R.C. 1715.54 apply. As R.C. 1715.54 allows investment in "stocks, bonds, debentures, and other securities," we conclude that such investments are permissible in the instant case and that, hence, the trial court did not err in its application of the law.[3]
B. First Assignment of Error
 The trial court erred and abused its discretion when it failed to conduct an independent analysis of the record when rejecting the magistrate's decision under Ohio R. Civ. P. 53
[sic].
Mr. Petro argues that, even if the trial court did not err in its application of law, the trial court was required to independently evaluate the record prior to ruling on the Board's objections to the magistrate's decision. He asserts that the trial court did not conduct such an independent analysis of the magistrate's decision and, hence, that the cause should be remanded to the trial court for such a determination. We disagree.
Civ.R. 53 was amended in 1995 and "no longer requires a trial court to conduct an independent review of the facts and make its own factual determination" when reviewing a magistrate's decision.Rogers v. Rogers (Dec. 17, 1997), Summit App. No. 18280, unreported, at 7. Moreover, "a trial court is no longer required to conduct an independent review and make its own determination when adopting the magistrate's decision." Id. at 9.
When a trial court finds that the record does not accurately reflect its actions,
 "[i]t is elementary that courts possess inherent common-law power to enter judgments or orders nunc pro tunc in proper cases. The phrase meaning simply `now for then' is accurately descriptive. The general purpose of such an entry is to record a prior but unrecorded act of the court. In other words, the power to make nunc pro tunc entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken. It is a simple device by which a court may make its journal speak the truth."
(Citations omitted.) In re Estate of Cook (1969), 19 Ohio St.2d 121,127, quoting Natl. Life Ins. Co. v. Kohn (1937), 133 Ohio St. 111,113. However, a nunc pro tunc entry is not appropriate where "it reflects a substantive change in [the] judgment." State exrel. Litty v. Leskovyansky (1996), 77 Ohio St.3d 97, 100.
The trial court was under no obligation to conduct an independent review of the magistrate's decision under Civ.R. 53 but, nonetheless, the trial court's nunc pro tunc entry evidenced such independent analysis. The trial court's nunc pro tunc entry clarified its decision making process. The trial court stated that it had reviewed the record and the magistrate's decision as well as the Board's objections to the magistrate's decision. Hence, we conclude that the trial court did not err in its review of the magistrate's decision and the objections thereto.
 III.
Mr. Petro's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER
FOR THE COURT CARR, P.J.
WHITMORE, J., CONCUR
[1] Pursuant to R.C. 109.24, the attorney general is the legal protector and enforcer of charitable trusts and is representing Mr. Petro in this matter.
[2] Mr. Petro appealed the trial court's judgment, while Betty Montgomery and Premier Bank and Trust did not.
[3] Mr. Petro also contends that R.C. 1715.51 et seq. does not apply because the library does not "hold" the funds. See, generally, 1994 Ohio Atty.Gen.Ops. No. 94-073 (setting forth the basis of this argument). Assuming, arguendo, that the term "hold" in R.C. 1715.51(A) has the meaning asserted by Mr. Petro, the library has such authority in the instant case. Mr. Petro asserts that, in order to "hold" funds, a governmental organization must have both custody and the power to invest the funds. Under R.C.3375.40(J), the Board generally has the power to "accept any bequest, gift, or endowment upon the conditions connected with such bequest, gift, or endowment[.]" In the instant case, the gift's conditions include the Board's investment of the gift principal. Hence, assuming, arguendo, that Mr. Petro's interpretation of R.C. 1715.51(A) is correct, we conclude that, by the gift instrument, the library is given the power to hold the money.