ANDERSON/MALTBIE PARTNERSHIP ET AL., APPELLEES, *v.* LEVIN,

TAX COMMR., APPELLANT.

[Cite as *Anderson/Maltbie Partnership v. Levin*,

127 Ohio St.3d 178, 2010-Ohio-4904.]

*Real property tax — R.C. 5709.07 — Property cannot be exempted from taxation as a public schoolhouse when the owner leases the property to the school for profit.*

(No. 2009-1671 — Submitted May 25, 2010 — Decided October 12, 2010.)

APPEAL from the Board of Tax Appeals, No. 2007-A-11.

_____

SYLLABUS OF THE COURT

Property cannot be exempted from taxation as a public schoolhouse when the owner leases the property to the school for profit. (R.C. 5709.07(A)(1), construed.)

_____

LANZINGER, J.

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA") concerning a real property tax exemption. Appellee Anderson/Maltbie Partnership ("AMP") is a for-profit entity that leases property to an Ohio community school. Appellee LKH Victory Corporation is a nonprofit entity that runs the school under the name Cincinnati College Preparatory Academy ("CCPA"). AMP and CCPA sought to exempt the parcel under R.C. 5709.07(A)(1), the "public-schoolhouse exemption." The Tax Commissioner denied the exemption because of the for-profit nature of the lease, but the BTA reversed. Applying its analysis from the earlier case *Performing Arts of Metro. Toledo, Inc. v. Wilkins* (Dec. 20, 2002), BTA No. 2001-J-977, reversed on other

grounds, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649, the BTA held that the property was entitled to a tax exemption based on the lessee's nonprofit use of the property as a public school.[1]

{¶ 2} The Tax Commissioner appealed, and we now reverse.

## Facts

{¶ 3} On December 30, 2002, AMP and CCPA jointly filed their exemption application, which sought to exempt the property for tax year 2002 and to obtain remission of taxes for tax years 1999, 2000, and 2001. The application cited R.C. 5709.07(A)(1) as the basis for exemption and explained its claim as follows:

{¶ 4} "[CCPA] is a public community school established under the authority of O.R.C. Chapter 3314, and was incorporated as an Ohio non-profit corporation on December 14, 1998. [CCPA] was incorporated for educational purposes and operates as a community school. As an entity organized for educational purposes, [CCPA] has applied for and received Internal Revenue Code §501(c)(3) tax-exempt status from the Internal Revenue Service as a public charity. * * * In accordance with O.R.C. §3314.02, [CCPA] entered into a charter contract with the State of Ohio Department of Education in 1999, which formally established [CCPA] as a public community school under Ohio law."

{¶ 5} At the BTA, the parties agreed to a set of stipulations based upon the documents in the record. The stipulations included the following:

{¶ 6} ● Since its inception in 1998, CCPA has operated as a community school for children in kindergarten through eighth grade.

---

1. The BTA granted the exemption in *Performing Arts*, but on appeal, this court reversed on other grounds, holding that the exemption application had to be dismissed for lack of jurisdiction because the lessee, but not the owner, had applied. *Performing Arts*, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649, ¶ 13, 15, 20. Consistent with the holding of *Performing Arts*, only AMP as owner had standing to file the application in this case, and this opinion will usually refer to the appellants collectively as "AMP."

**{¶ 7}** ● On July 28, 1999, CCPA entered into a triple-net lease with AMP as lessor, and occupied the property under that lease and its amendments from October 7, 1999 through October 6, 2004.

**{¶ 8}** ● AMP had purchased the property leased by CCPA in 1987 for $1,325,000.

**{¶ 9}** ● The monthly rental for the leased property was $22,958.04.

**{¶ 10}** ● CCPA is contractually obligated under the triple-net lease to pay all real estate taxes and assessments during the lease term.

**{¶ 11}** ● AMP did not conduct any business at the property during the lease term, other than leasing it to CCPA.

**{¶ 12}** For its part, AMP stipulated that it was an "entity of two or more persons to carry on as co-owners a business for profit pursuant to O.R.C. § 1775.05(A)," i.e., a for-profit partnership.

**Analysis**

**{¶ 13}** This case presents a significant issue that arises in the context of Ohio's community schools. By statute, a community school "is a public school, independent of any school district, and is part of the state's program of education." R.C. 3314.01(B); see *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 7 (detailing aspects of community schools). Since 1852, Ohio law has provided the exemption for "public schoolhouses" that is currently codified at R.C. 5709.07(A)(1). 50 Ohio Laws 135, 137. The exemption has been applied to public and private property: to public schools owned and operated by the public school districts in Ohio, and to nonprofit private and parochial schools operated for the public benefit.

**{¶ 14}** Typically, public school districts own their own school buildings; but as a community school, CCPA is not owned and operated by any school district. Community schools raise novel issues of exemption because, by statute,

they qualify as public schools but often operate on privately owned property. And in this case, the school occupies the property under a commercial, for-profit lease.

{¶ 15} The Tax Commissioner in his final determination held that although community schools are public schools, the fact that the property is privately owned and is leased to the school under a for-profit lease makes the property ineligible for the exemption. Because we conclude that the commissioner's determination reflects a proper application of the standard for exemption that we articulated in *Gerke v. Purcell* (1874), 25 Ohio St. 229, paragraph eight of the syllabus, we reverse the decision of the BTA and reinstate the commissioner's denial of the exemption.

*Property leased to a school under a for-profit lease is not exempt as a*

*"public schoolhouse," because private property can qualify for*

*the exemption only if it is used "without any view to profit"*

{¶ 16} When a property owner applies for an exemption, we consider an overarching principle. Because laws that exempt property from tax are in derogation of equal rights, they must be strictly construed. *First Baptist Church of Milford v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 10; *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8. The principle of strict construction requires that the statute's language be construed against the exemption, meaning that the onus is on the taxpayer to show that the language of the statute "clearly express[es] the exemption" in relation to the facts of the claim. *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104, 554 N.E.2d 1310; *Lakefront Lines, Inc. v. Tracy* (1996), 75 Ohio St.3d 627, 629, 665 N.E.2d 662; *H.R. Options, Inc. v. Wilkins*, 102 Ohio St.3d 1214, 2004-Ohio-2085, 807 N.E.2d 363, ¶ 2; *In re Estate of Roberts* (2002), 94 Ohio St.3d 311, 314, 762 N.E.2d 1001. The fact that the burden is on the taxpayer means that " '[i]n all doubtful cases exemption is denied.' " *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7, quoting

4

*Youngstown Metro. Hous. Auth. v. Evatt* (1944), 143 Ohio St. 268, 273, 28 O.O. 163, 55 N.E.2d 122.

{¶ 17} The statute we must consider is currently codified at R.C. 5709.07(A)(1) and provides: "The following property shall be exempt from taxation: (1) Public schoolhouses, the books and furniture in them, and the ground attached to them necessary for the proper occupancy, use, and enjoyment of the schoolhouses, and not leased or otherwise used with a view to profit."

{¶ 18} The public-schoolhouse exemption was enacted along with other exemptions in the wake of the adoption of the new constitution in 1851. 50 Ohio Laws 135, 137. Before the adoption of the 1851 Constitution, "the whole matter of taxation was committed to the discretion of the general assembly." *Zanesville v. Richards* (1855), 5 Ohio St. 589, 592. And the "right to make exceptions and exemptions was unquestionable." Id. But the 1851 Constitution circumscribed that power through Article XII, Section 2, which required uniform taxation of property and enumerated specific types of exemption the legislature could pass. Id. The legislature's power to pass exemptions was construed to be limited to exemptions expressly authorized by the Constitution. Id. at 592-593; *Denison Univ. v. Bd. of Tax Appeals* (1965), 2 Ohio St.2d 17, 24, 31 O.O.2d 10, 205 N.E.2d 896.[2]

{¶ 19} This court in *Gerke*, 25 Ohio St. 229, considered the claimed tax exemption of Catholic parochial schools in view of the specific constitutional authorizations and the statutory language of the exemptions. We determined that the Constitution's authorization of a public-schoolhouse exemption was applicable only to school buildings that "belong to the public," buildings that "are designed for the school established and conducted under the authority of the

_____

2. In 1931, an amendment restored to the General Assembly the plenary power to enact exemptions: the power is limited only by the provisions of Article I of the Constitution. See *Denison Univ.*, paragraph three of the syllabus; *Dayton v. Cloud* (1972), 30 Ohio St.2d 295, 59 O.O.2d 370, 285 N.E.2d 42, paragraph one of the syllabus.

public." Id. at 242. In contrast, we held that the *statute's* reference to public schoolhouses is "not used in the sense of ownership" but rather of the "uses to which the property is devoted," with the result that the exemption applies to private property used to support instruction that is "for the benefit of the public." Id. at 246-247.

{¶ 20} The term "public" was construed differently in the statute to make sense of the statute's limitation that the schoolhouse grounds must not be "leased or otherwise used with a view to profit." Because political subdivisions such as public school districts are inherently nonprofit, the condition did not seem "appropriate if intended to apply only to institutions established by the public." Id. at 247. On the other hand, the prohibition against making a profit had "marked significance when applied to private property," and accordingly, the statute was construed to reach private property. Id. The *constitutional* basis for exempting private property when used as a school lay in the authorization of exemptions for "institutions of purely public charity." Id. at 243-244. As a result, the "exclusion of all idea of private gain or profit" constitutes a basic condition that private property must satisfy to qualify for this exemption. Id. at 247.

{¶ 21} One dispute between the parties is therefore immaterial: the question whether R.C. 5709.07's limiting clause "not leased or otherwise used with a view to profit" applies to the schoolhouse itself as well as the "ground attached to" the schoolhouse. Ultimately, the dispute is inconsequential because the holding of *Gerke* clearly establishes that the schoolhouse itself cannot qualify for exemption unless it is used "without any view to profit." *Gerke*, 25 Ohio St. 229, paragraph eight of the syllabus.

{¶ 22} *Gerke* holds that the public-schoolhouse exemption does extend to privately owned property, but only when that property is "appropriated to the support of education for the benefit of the public without any view to profit," an essential element being the "exclusion of all idea of private gain or profit." *Gerke*

6

at 247. By seeking to exempt a commercial office building that is leased to the school for profit, AMP seeks a broader exemption, an application that we reject.

{¶ 23} The Tax Commissioner's final determination did not cite *Gerke*, but he did deny AMP's exemption because the property was subject to a for-profit commercial lease. We hold this analysis to be correct under *Gerke*: property cannot be exempted from taxation as a public schoolhouse when the owner leases the property to the school for profit.[3]

> *Cleveland State Univ. v. Perk does not authorize the grant of a*
> *public-schoolhouse exemption when land with permanent structures*
> *is leased to a school for profit under a commercial lease*

{¶ 24} Both the BTA decision and AMP's brief heavily rely on *Cleveland State Univ. v. Perk* (1971), 26 Ohio St.2d 1, 55 O.O.2d 1, 268 N.E.2d 577. *Cleveland State* is inapposite for two reasons. First, *Cleveland State* involved temporary modular structures installed on the university's land. Both the reasoning and the syllabus law of that case restrict *Cleveland State*'s holding to that particular situation. Second, although the public-college exemption in R.C. 5709.07(A)(4) generally parallels the public-schoolhouse exemption at R.C. 5709.07(A)(1), the former expressly authorizes a broader exemption of "buildings" so long as they are "connected with" the public college.

---

3. Although he did not properly raise the alternative argument, the Tax Commissioner cites cases that allegedly overrule *Gerke*'s holding that a schoolhouse could be "public" even though privately owned. We disagree. The later cases the Tax Commissioner cites in this regard do not undermine *Gerke*. See *Weir v. Day* (1878), 35 Ohio St. 143 (granting injunction against private school's use of a public school building under a lease given the circumstances of the case; this case does not address any issue of taxation or exemption); *Gilmour v. Pelton* (1877), 5 Ohio Dec.Rep. 447 (although common pleas court exempted parochial schools based on a charitable exemption rather than the public-schoolhouse exemption, according to the unofficial reporter's note on the history of the case in Ohio Decisions Reprint, the Supreme Court's affirmance cited and did not retreat from *Gerke*); *Watterson v. Halliday* (1907), 77 Ohio St. 150, 82 N.E. 962 (holding that parish houses used as residences by priests did not qualify for a charitable exemption or an exemption for a house of worship; this case does not address the schoolhouse exemption).

**{¶ 25}** In *Cleveland State*, the university (an instrumentality of the state of Ohio) enjoyed the exemption of a parcel of land under R.C. 5709.08, which exempts "public property used exclusively for a public purpose." Not having the wherewithal to construct permanent buildings on the site, Cleveland State University rented temporary modular buildings that were installed at the site and used for classrooms and faculty offices. The narrow question was whether the modular buildings could qualify for exemption from real property taxation under the public-college exemption.

**{¶ 26}** In answering affirmatively, we noted two significant predicates for granting the exemption. First, this court had rejected the proposition that *college buildings* were required to be used for "charitable purposes" to qualify for exemption. *Cleveland State*, 26 Ohio St.2d at 6, 55 O.O.2d 1, 268 N.E.2d 577, citing *Denison Univ.*, 2 Ohio St.2d 17, 31 O.O.2d 10, 205 N.E.2d 896, paragraph four of the syllabus. Second, given the structure of the public-college exemption, the express limitation to property "not used with a view to profit" applied only to the "*lands* connected with" public colleges, not to the separately mentioned "*buildings* connected with" the institution. *Cleveland State* at 6-7, citing *Kenyon College v. Schnebly* (Knox C.P.1909), 12 Ohio C.C.(N.S.) 1, affirmed, 81 Ohio St. 514, 91 N.E. 1138. R.C. 5709.07(A)(4) exempts "[p]ublic colleges and academies and all buildings connected with them, and all lands connected with public institutions of learning, not used with a view to profit"; the phrase "not used with a view to profit" modifies "lands," but not "buildings."

**{¶ 27}** Combining these principles, we concluded that the modular buildings qualified as "buildings connected with" the university since they were " 'with reasonable certainty used in furthering or carrying out the necessary objects and purposes of the college.' " *Cleveland State,* 26 Ohio St.2d at 8, 55 O.O.2d 1, 268 N.E.2d 577, quoting *Denison Univ.,* 2 Ohio St.2d at 21-22, 31 O.O. 2d 10, 205 N.E.2d 896. The syllabus states that an exemption could be allowed for

"buildings located on the campus of a state university and used exclusively for classrooms and faculty offices" even though the buildings were "leased for a term of years, with provision for rental therefor, from a corporation for profit." *Cleveland State*, paragraph two of the syllabus. Cf. *Athens Cty. Aud. v. Wilkins*, 106 Ohio St.3d 293, 2005-Ohio-4986, 834 N.E.2d 804, ¶ 19-22 (public-college exemption not available for off-campus private dormitories owned by a for-profit company, when college did not lease the buildings and would not itself benefit from the tax exemption).

{¶ 28} In contrast, the present case raises the distinct issue whether the "schoolhouse" itself and the land beneath it may qualify for a public-schoolhouse exemption, when both are leased from a for-profit landlord. *Cleveland State* does not control the present case, and we cannot extend its holding to the present facts in light of the restrictive character of the public-schoolhouse exemption.

*Although leased property may sometimes qualify for exemption, property*
*subject to a commercial lease with a for-profit landlord does not qualify*

{¶ 29} AMP also contends that a commercial lease is irrelevant to the issue of exempt status so long as the lessee uses the property for exempt purposes. AMP emphasizes certain decisions that allow the exemption of leased property.

{¶ 30} This argument raises two questions. The first is whether ownership and use must coincide for a building to qualify as an exempt public schoolhouse. *Gerke* answers this question by declaring that the "public" in "public schoolhouse" "is not used in the sense of ownership, but as descriptive of the uses to which the property is devoted." *Gerke*, 25 Ohio St. at 246-247. Thus, property "appropriated to the support of education for the benefit of the public without any view to profit" qualifies for exemption, id. at 247, and that standard contains no requirement that the owner be the entity that operates the school. It follows that a community school that leases its building may still receive the benefit of tax exemption as a public schoolhouse.

**{¶ 31}** But property subject to a commercial, for-profit lease is a different matter. *Gerke* specifically limits the exemption of privately owned property to property that is used "without any view to profit." The second question raised by AMP's argument is whose use should be considered — the lessee's, or both the lessor's and the lessee's?

**{¶ 32}** AMP relies on *Bexley Village, Ltd. v. Limbach* (1990), 68 Ohio App.3d 306, 588 N.E.2d 246, to maintain that the commissioner and the BTA must focus exclusively on the lessee's use of the property. In *Bexley Village*, the Tenth District Court of Appeals granted the public-college exemption for a parking lot that was leased by a private developer to Capital University for a rent of $1 per year. Instead of drawing the obvious conclusion that the nominal character of the rent ensured that the lease was not for profit, the Tenth District held that in deciding whether the property was "used with a view to profit," one entity must be considered, which in that case was the lessee, Capital University.

**{¶ 33}** Because *Bexley Village* addresses the public-college exemption, we regard the case as inapposite. We hold that under the public-schoolhouse exemption, the restriction that the property not be used with a view to profit requires examination of the total use of the property by both lessor and lessee. If the lease is intended to generate profit for the lessor, the property does not qualify for exemption; similarly, the property does not qualify if the lessee's use is intended to generate profit.[4]

**{¶ 34}** It follows that because AMP leases the property to CCPA under a for-profit lease, the public-schoolhouse exemption is not available in the present case.

*Case law interpreting the exemption for houses of*

---

4. We note, however, that there may be situations in which an exemption could be allowed under R.C. 5709.07 even though the property generated rental income for the owner. See R.C. 5709.07(B) (possibility of exemption for leased property when income goes to municipal corporation or school district).

*public worship does not apply to this case*

**{¶ 35}** AMP also relies on BTA decisions in which the BTA reversed the Tax Commissioner's denial of exemption under R.C. 5709.07(A)(2), the house-of-public-worship exemption. See *Gary Clair/Christ United Church v. Tracy* (Sept. 11, 1998), BTA No. 97-K-306; *Northcoast Christian Ctr. v. Tracy* (July 18, 1997), BTA No. 96-M-811; *Jubilee Christian Fellowship, Inc. v. Tracy* (May 17, 2002), BTA No. 99-R-239. AMP argues that denying the exemption in this case necessarily contradicts the grant of exemption in those cases. We disagree. Although each of the BTA cases that AMP cites involved a religious congregation leasing a building for use as a place of worship under leases that were commercial, or presumed to be commercial, these cases are not dispositive of the issue before us.

**{¶ 36}** The issue of whether buildings devoted to public worship that are subject to a commercial lease are tax exempt is not before us, and we do not decide it. But the analysis differs in cases involving houses of public worship because *Gerke*'s requirement that a privately owned schoolhouse be operated "without any view to profit" does not apply to them. Unlike schoolhouses, houses of worship, by their nature, are privately owned. Moreover, the 1851 Constitution explicitly authorized an exemption for houses of worship, whereas it did not authorize exemption of private schools unless they were "institutions of purely public charity."

**{¶ 37}** Furthermore, the exemption for houses of public worship as currently codified does not expressly prohibit a for-profit use of the building devoted to worship. Although for more than a century this exemption and the public-schoolhouse exemption were closely linked, that link was broken in 1988 with the enactment of Am.S.B. No. 71. 142 Ohio Laws, Part I, 147 ("S.B. 71"). S.B. 71 separately codified them at R.C. 5709.07(A)(1) (exemption for public schoolhouse) and at R.C. 5709.07(A)(2) (exemption for house of public worship).

The latter exemption now provides the exemption for "[h]ouses used exclusively for public worship, the books and furniture in them, and the ground attached to them that is not leased or otherwise used with a view to profit and that is necessary for their proper occupancy, use, and enjoyment." R.C. 5709.07(A)(2). That wording unambiguously applies the not-for-profit limitation only to the "ground attached" to the building, not to the building itself. It follows that any limitations on the exemption for the building must relate to the requirement that it be used exclusively for public worship.

*The Tax Commissioner's argument that Gerke*
*has been overruled is jurisdictionally barred*

{¶ 38} Departing from the analysis he employed in his final determination, the Tax Commissioner's briefs in this court insist that our case law holds that the public-schoolhouse exemption applies only when the property is publicly owned, i.e., owned by the state or a political subdivision such as a school district. As indicated in footnote three of this opinion, the cases cited by the Tax Commissioner do not overrule *Gerke*. But we lack jurisdiction to address this assertion as a ground for reversal, because the Tax Commissioner did not assign any error in the notice of appeal in relation to this argument. See *Fogg-Akron Assoc., L.P. v. Summit Cty. Bd. of Revision*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, ¶ 12, citing *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 28.

**Conclusion**

{¶ 39} The BTA erred by granting a public-schoolhouse exemption for property owned by a commercial landlord and leased to a community school under a for-profit lease. We therefore reverse the decision of the BTA and reinstate the Tax Commissioner's denial of the exemption.

Decision reversed.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 40} Case law constrains me to concur in the majority's holding, but I write to express my concern that our holding places community schools in a conundrum as to how to pay property taxes on leased property, because community schools are funded by state funds but are prohibited by law from using those funds to pay taxes.

{¶ 41} Cincinnati College Preparatory Academy ("CCPA") is a community school as defined in R.C. Chapter 3314. Pursuant to R.C. Chapter 3314, community schools are *public* schools and are part of the state's program of education. R.C. 3314.01(B). Thus, community schools receive state funding. See R.C. 3314.08. However, community schools cannot use state funds to pay any taxes that they owe. R.C. 3314.082.

{¶ 42} CCPA leased property to use for its schoolhouse pursuant to a triple-net lease, which is standard practice for commercial properties and requires the lessee to assume certain obligations pertaining to the leased property, including utilities, maintenance, insurance, and taxes. See, e.g., *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 6. Thus, CCPA was obligated by the lease to pay any taxes due on the property.

{¶ 43} Generally, R.C. 5709.07 exempts property from taxation that is used for certain charitable activities, and in particular, subsection (A)(1) exempts from taxation "public schoolhouses" and "the ground attached to them" as long as the property is "not leased or otherwise used with a view to profit." In my opinion, it is the lessee's *use* of the property that should determine whether the property qualifies for a tax exemption under R.C. 5709.07(A)(1). For example, if

the lessee uses property for a public schoolhouse and has no view to profit in doing so, the property should be exempt from taxation. However, as the majority opinion makes clear, case law does not support my view and instead supports our holding that a public schoolhouse is not exempt from taxation if the owner of the property leases it with a view to profit.

{¶ 44} My concern is that our holding creates a predicament for community schools that lease the property and buildings that they use to operate the schools. Under our holding, lessors who lease property for use as a schoolhouse will fail to qualify for an exemption under R.C. 5709.07(A)(1) when the lessor leases the property with a view to profit. The property-tax obligation is passed on to the community school pursuant to the triple-net lease. However, community schools are prohibited by law from using state funds to pay these taxes. In my opinion, disqualifying property from the schoolhouse exemption when it is *used* for a public schoolhouse merely because the property's lessor has a view to profit seems to run contrary to the general intent within R.C. 5709.07, and causes community schools that lease property to face a conundrum as to how they will pay the real estate taxes.

{¶ 45} Accordingly, although I concur in the holding in this case, I invite the General Assembly to amend R.C. 5709.07(A)(1) if its members share my concerns. The General Assembly created an exemption for buildings that are "connected with" colleges, irrespective of whether the lessor leases buildings with a view to profit. See *Cleveland State Univ. v. Perk*, (1971), 26 Ohio St.2d 1, 55 O.O.2d 1, 268 N.E.2d 577. The General Assembly could amend R.C. 5709.07(A)(1) to achieve a similar result.

{¶ 46} Accordingly, I concur.

_____

Eastman & Smith, Ltd., Graham A. Bluhm, M. Charles Collins, and Amy J. Borman, for appellees.

14

Richard Cordray, Attorney General, and Lawrence D. Pratt, Barton A. Hubbard, and Sophia Hussain, Assistant Attorneys General, for appellant.

_____