**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *2350 Morse, L.L.C. v. Testa,* Slip Opinion No. 2017-Ohio-7800.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7800

2350 MORSE, L.L.C., APPELLANT, *v*. TESTA, TAX COMMR., ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *2350 Morse, L.L.C. v. Testa,* Slip Opinion No. 2017-Ohio-7800.]

*Taxation—Real property—"Public schoolhouse" exemption—Former R.C. 5709.07(A)(1)—View to profit—Exclusive-charitable-use exemption—R.C. 5709.12(B) and 5709.121—Record does not support Board of Tax Appeals' finding of a view to profit—Decision denying claims for exemption reversed.*

(No. 2015-0342—Submitted February 28, 2017—Decided September 26, 2017.)

APPEAL from the Board of Tax Appeals, Nos. 2012-1934 and 2012-2214.

_____

**Per Curiam.**

{¶ 1} 2350 Morse, L.L.C., appeals the decision of the Board of Tax Appeals affirming the tax commissioner's denial of its application for tax exemption of real property leased to a community school. The Board of Tax Appeals ("BTA")

rejected 2350 Morse's claim that it was entitled to either the public-schoolhouse exemption codified at former R.C. 5709.07(A)(1), 2005 Am.Sub.H.B. No. 66, 151 Ohio Laws, Part II, 2868, and Part III, 4397, or the expanded charitable-or-public-use exemption under R.C. 5709.12, as clarified in R.C. 5709.121.

{¶ 2} This appeal presents the same overall corporate structure and the same claims for exemption as those at issue in *250 Shoup Mill, L.L.C. v. Testa*, 147 Ohio St.3d 98, 2016-Ohio-5012, 60 N.E.3d 1254, and *Breeze, Inc. v. Testa*, ___ Ohio St.3d ___, 2017-Ohio-7801, ___ N.E.3d ___. In all three cases, the BTA found a "view to profit" in the leasing arrangement that defeated the claims for exemption. In *Shoup Mill*, we determined that the record supported that finding and affirmed. *Id.* at ¶ 4. In *Breeze*, announced this day, we vacated the decision of the BTA and remanded for further proceedings. *Id.* at ¶ 1. In the present appeal, we hold that the BTA unreasonably ignored evidence of 2350 Morse's intent in leasing the property. The only reasonable conclusion based on the evidence is that there was no view to profit. We therefore reverse the decision of the BTA.

**Factual Background**

{¶ 3} 2350 Morse is part of the arrangement of community schools and related entities that we described more fully in *Breeze*. *Id*. at ¶ 2. As part of this arrangement, 2350 Morse holds title to property used by a community school referred to as Horizon Science Academy–Columbus Middle School ("Horizon Middle School"). The property is made up of several contiguous parcels that are located in the Columbus City School District and in the Westerville City School District. 2350 Morse collects the rent with which it pays the mortgage for the property. Surplus rental income is passed to New Plan Learning, Inc. ("New Plan"), a nonprofit corporation at the head of the arrangement, for use in support of all the affiliated community schools. In this case, according to New Plan's financial statements, the monthly mortgage payment for the property was $26,002. The record also shows that Horizon Middle School paid $30,000 a month in rent—an

amount set at the lender's insistence that rental income be 15 percent greater than the loan-payment amount.

{¶ 4} 2350 Morse sought an exemption for the property for tax year 2010 under both R.C. 5709.07 and 5709.121.[1] The tax commissioner's final determination, however, addressed only R.C. 5709.07. As in *Breeze*, the tax commissioner determined that because 2350 Morse had collected "substantial market-rate rent," the property had been leased "with a view to profit" for purposes of former R.C. 5709.07(A)(1). Thus, 2350 Morse was not entitled to an exemption. 2350 Morse appealed to the BTA, which affirmed the denial of the exemption.

### The Statutory Provisions

{¶ 5} Former R.C. 5709.07(A)(1) provided a tax exemption for "[p]ublic schoolhouses, the books and furniture in them, and the ground attached to them necessary for the proper occupancy, use, and enjoyment of the schoolhouses, and not leased or otherwise used with a view to profit." 151 Ohio Laws, Part III, at 4397. Under R.C. 5709.12(B), property "used exclusively for charitable purposes" is exempt from taxation. And R.C. 5709.121(A)(2) provides that real property "belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes by such institution," if the property "is made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit." "[T]he key inquiry in determining whether property is leased with a view to profit focuses on the aim or intention of the lessor." *Breeze*, ___ Ohio St.3d ___, 2017-Ohio-7801, ___ N.E.3d ___, at ¶ 8.

---

[1] 2350 Morse indicated that it was seeking an exemption under R.C. 5709.121, but that statute simply provides definitions for the phrase "used exclusively for charitable or public purposes." The actual source of the charitable-or-public-use exemption is R.C. 5709.12.

## Analysis

**{¶ 6}** 2350 Morse contends that it did not intend to generate a profit from the lease. Murat Arabaci, New Plan's president and chief financial officer, explained that the amount of rent charged to Horizon Middle School was dictated by the lender. According to Arabaci, a lender normally would require a 20 to 25 percent "cushion" of rental income over expenses, but New Plan was able to negotiate that cushion to 15 percent. The goal, Arabaci maintained, was to minimize the rent paid by the school. In fact, New Plan had a practice of deferring or writing off the rental-payment amount when a school encountered budgetary problems and was unable to pay.

**{¶ 7}** As in *Breeze*, this evidence was virtually ignored. As it did in that case, the BTA concluded that 2350 Morse's lease had been done with a view to profit because there was an "excess of rental income over expenses" that was distributed to all the schools in the arrangement. BTA Nos. 2012-1934 and 2012-2214, 2015 WL 731779, *2 (Jan. 28, 2015). But as we explained in *Breeze*, although the fact that rental income exceeds expenses may be relevant in determining whether property was leased with a view to profit, the "overriding focus—as prescribed by the language of the statutes—must be on the intent of the lessor." *Breeze* at ¶ 13. The BTA's singular focus on the excess of rental income to the exclusion of 2350 Morse's undisputed evidence about the intent behind the lease was unreasonable. We therefore reverse its decision. *See* R.C. 5717.04.

**{¶ 8}** In *Breeze*, we remanded the case and instructed the BTA to focus on the lessor's intent under the lease. *Breeze* at ¶ 16. Here, a remand is not necessary: No reasonable reading of the record could support a finding that 2350 Morse leased the property with a view to profit. The only fact relied upon by the BTA—the modest excess of rental income over expenses—resulted not from an intent to profit from the lease but from compliance with a precondition set by the lender. 2350 Morse's evidence that it did not intend to profit was uncontradicted.

**Conclusion**

{¶ 9} For the foregoing reasons, we reverse the decision of the BTA and order that the exemption be granted in accordance with this opinion.

Decision reversed.

O'DONNELL, KENNEDY, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in judgment only, with an opinion.

FRENCH, J., concurs in judgment only.

O'NEILL, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., concurring in judgment only.**

{¶ 10} I concur in judgment only. For the reasons set forth in my dissenting opinion in *Breeze, Inc. v. Testa*, ___ Ohio St.3d ___, 2017-Ohio-7801, ___ N.E.3d ___, announced today, I disagree with the majority's analysis to the extent that a majority of this court has overruled *250 Shoup Mill, L.L.C. v. Testa*, 147 Ohio St.3d 98, 2016-Ohio-5012, 60 N.E.3d 1254, without acknowledging that it has done so. However, in this case, I concur in the judgment reversing the decision of the BTA.

{¶ 11} Testimony at the BTA hearing specifically established that the mortgage lender for appellant, 2350 Morse, L.L.C., insisted that the rental income for the property at issue in this case be 15 percent above the loan-payment amount, $26,002 per month, which would have set the rental payment at $29,902.30 per month. The actual monthly rent payment was $30,000. The $97.70 revenue in excess of the amount required by the lender is de minimis for purposes of applying *Shoup Mill*.

{¶ 12} Accordingly, although I agree with the majority's judgment, I disagree with its rationale and I concur in judgment only.

_____

**O'NEILL, J., dissenting.**

**{¶ 13}** I must respectfully dissent. While the facts here might be slightly different from those in *250 Shoup Mill, L.L.C. v. Testa*, 147 Ohio St.3d 98, 2016-Ohio-5012, 60 N.E.3d 1254, the same analysis is applicable. We have appellant, 2350 Morse, L.L.C., a company that was a real-estate title-holding company in the business of owning property that was being leased to a charter school. Despite 2350 Morse's nonprofit tax status, it was not a charitable or educational organization. This was a for-profit house-of-cards scheme anyway you look at it.

**{¶ 14}** For one thing, as this court stated in *Shoup* at ¶ 20,

if [the landowner] cannot demonstrate that its own use of the property as lessor is charitable, it cannot qualify as a "charitable institution" under R.C. 5709.121 because the ownership and leasing of the property is [the landowner's] only activity. *See Northeast Ohio Psych*. [*Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188] at ¶ 14; *Rural Health Collaborative of S. Ohio, Inc. v. Testa*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, ¶ 23 ("The determination whether a property owner qualifies as a charitable institution under R.C. 5709.121 requires examination of the 'core activity' of the institution and determining whether that activity qualifies as charitable for property-tax purposes").

**{¶ 15}** In the present case, it is undisputed that the sole activity of 2350 Morse was to operate as a landlord. The company was set up to make money, it was making money, and the fact that a schoolhouse was its only tenant is legally irrelevant.

**{¶ 16}** The majority has decided to reverse the decision of the Board of Tax Appeals ("BTA") in this case primarily on the basis that 2350 Morse's mortgage payment was 87 percent of the amount it was charging for rent on the property. In

my view, whether that number was 87 percent or 67 percent as it was in *Shoup*, *see* 147 Ohio St.3d 98, 2016-Ohio-5012, 60 N.E.3d 1254, at ¶ 22, does not change the fact that 2350 Morse was not acting as a charitable organization and, therefore, is not entitled to treatment as a charitable organization. Profits are profits. 2350 Morse was earning about $48,000 per year strictly in its role as landlord. Facts are facts, and the motives of the principals here do not convert hard cash into charity. And let's not be naïve here. Rent payments that retire a mortgage result in a commercial building that is mortgage free. There is no logic that supports the conclusion that this scenario is anything but a very profitable venture for the owner of the building.

{¶ 17} Additionally, it is well established that the BTA's finding of a view to profit should be treated as "a determination of fact that merits our deference." *Cuyahoga Cty. v. Testa*, 145 Ohio St.3d 157, 2016-Ohio-134, 47 N.E.3d 814, ¶ 32. The BTA determines the facts, and we defer to its wisdom in a situation such as this. Consider, also, that the burden of proof is on the property owner to show that it is entitled to an exception to the general rule that all property owners must pay tax. R.C. 5715.271. It is clear that the BTA concluded that 2350 Morse failed to meet its burden. I see no reason to reverse.

{¶ 18} I must dissent.

_____

Eastman & Smith, Ltd., M. Charles Collins, and Graham A. Bluhm, for appellant.

Michael DeWine, Attorney General, and Sophia Hussain and Melissa Baldwin, Assistant Attorneys General, for appellee Tax Commissioner.

Rich & Gillis Law Group, L.L.C., Karol C. Fox, and Richelle L. Thoburn, for appellee Westerville City School District Board of Education.

_____